[Cite as *In re A.P.*, 2018-Ohio-3818.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re A.P., J.P.

Court of Appeals No. L-18-1063

Trial Court No. JC 15250322

**DECISION AND JUDGMENT**

Decided:  September 19, 2018

* * * * *

Dan M. Weiss, for appellant.

Carmille Akande, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant-mother to the subject minor children, A.P. and J.P., and granted permanent custody to appellee, Lucas County Children Services Board.  The father of A.P. and the father of J.P., both of whose

parental rights were also terminated, did not appeal the judgment. For the reasons set forth below, this court affirms the judgment of the juvenile court.

{¶ 2} The following facts are relevant to this appeal. On September 21, 2015, as amended on October 1, 2015, appellee filed a complaint in dependency and neglect with a motion for an emergency shelter care hearing for the children. Since November 2011, when the children were ages three and one, appellee has been involved with the family due to appellant's narcotic prescription-seeking behaviors for a chronic medical condition involving her periodic self-directed hospitalizations at different area hospitals. During her hospitalizations appellant had no family support and there was no place for the children to go. The fathers of the children were incarcerated out of state and uninvolved with them.

{¶ 3} On September 20, 2015, appellant again sought hospitalization. The caseworker testified appellant "called the Agency asking for help because she had no place to place the children while she was admitted." The day before appellant presented herself to another hospital seeking pain medication. The first hospital admitted her to perform a test she requested and determined appellant's test results were "normal." The first hospital reported appellant's "pain clinic" indicated she "had gone through 30 Oxycodone and 30 Hydrocodone pills in just 5 days." The first hospital also reported appellant's high rate of asking for pain management medication from 11 area hospitals between March and September 2015. The first hospital then "refused pain medication

2.

management to mother" because of "a history of what appears to be seeking multiple prescriptions for strong narcotic medications."

{¶ 4} Immediately upon discharge from the first hospital, appellant went to a second hospital "and requested Dilaudid." She was admitted to the second hospital "for no medical reason." After receiving two doses, she requested more, and the hospital refused to give more while the children were in her care. The second hospital cleared her for discharge, but she refused and demanded hospitalization even though there was no place for the children to go. The juvenile court issued an ex parte order on September 20, 2015, ordering appellee to provide the children immediate shelter care due to exigent circumstances and ordering an emergency shelter care hearing.

{¶ 5} Following the emergency shelter care hearing on September 21, 2015, the juvenile court's magistrate issued an interim order awarding appellee interim temporary custody to investigate placement with a relative. The magistrate ordered appellant to "undergo a dual diagnostic assessment" and "substance abuse screening." The magistrate also appointed a guardian ad litem to represent the children and attorneys to represent appellant and each father.

{¶ 6} As journalized on January 14, 2016, at the December 17, 2015 adjudicatory hearing, the magistrate found by clear and convincing evidence A.P. and J.P. were each a dependent and neglected child and awarded appellee temporary custody of the children "with the goal of reunification" along with a number of conditions. As journalized on February 22, 2016, the juvenile court judge adopted the magistrate's decision and

3.

awarded appellee temporary custody of the children effective December 17, 2015, with the same goal and conditions.

{¶ 7} On June 28, 2017, pursuant to R.C. 2151.353(B) and 2151.414, appellee moved for permanent custody of A.P. and J.P. Appellee alleged A.P. and J.P. could not be placed with appellant within a reasonable time or should not be placed with appellant pursuant to R.C. 2151.414(B)(1)(a) and that permanent custody is in the children's best interests pursuant to R.C. 2151.414(D). Appellant "has been hospitalized or in a rehabilitation facility the majority of the time the children" have been in appellee's custody. Appellant "continues to struggle with her illness." Appellant's illness "has impeded her ability to function both physically and emotionally." Appellee's permanency plan for the children was to obtain permanent custody so the children could be adopted.

{¶ 8} The permanent custody hearing was held on March 5, 2018. The transcript of the hearing is in the record. Appellant failed to appear in court, but her attorney was present to request a continuance, which was denied. By judgment entry journalized March 14, 2018, the juvenile court terminated all parental rights in and to the children and granted permanent custody to appellee for adoptive placement and planning and made a number of relevant findings to this appeal.

{¶ 9} Pursuant to R.C. 2151.414(B)(1)(a), by clear and convincing evidence the juvenile court found A.P. and J.P. "cannot be placed with either parent within a reasonable time and should not be placed with either parent."

4.

{¶ 10} Pursuant to R.C. 2151.414(B)(1)(d), by clear and convincing evidence the juvenile court found A.P. and J.P. have been in appellee's custody for over 12 months out of a 22 month period, since September 20, 2015.

{¶ 11} Pursuant to R.C. 2151.414(E)(1), the juvenile court found the parents "have failed continuously and repeatedly to substantially remedy the conditions causing the [children] to be placed outside [their] home."

{¶ 12} Pursuant to R.C. 2151.414(E)(2), the juvenile court found appellant's physical disability "is so severe that it makes her unable to provide an adequate permanent home at the present time or as anticipated, within one year. * * * It is unknown when Mother will be released [from the hospital.]"

{¶ 13} Pursuant to R.C. 2151.414(D)(1), the juvenile court found "it is in the best interest of the children to award permanent custody to LCCS for adoptive placement and planning." The children have been in appellee's custody for over two years, and while their needs are being met by the foster parents, "the children are in need of a permanent, forever home."

The Court further finds that case plan services have been offered to the family to assist the parents in reunification, but the evidence demonstrated that it would be contrary to the welfare of the children to place them with their parents or to delay permanency any longer.

The court further finds that LCCS has made reasonable efforts to avoid the continued removal of the children from the home, and to

5.

implement and finalize a permanent plan by providing numerous case plan services to the family, and when those efforts failed, LCCS identified an alternative permanent plan and requested permanent custody.

{¶ 14} It is from the juvenile court's March 14, 2018 judgment entry which appellant filed her appeal, journalized on March 20, 2018.

{¶ 15} Appellant sets forth two assignments of error:

I. The Trial Court abused its discretion when it denied Appellant's request for continuance because of Appellant's unexpected medical event that precluded her from being able to attend the permanent custody hearing.

II. The Trial Court's decision to grant Lucas County Children Service's motion for permanent custody was against the manifest weight of the evidence.

{¶ 16} In support of her first assignment of error, appellant argued she met her burden under Juv.R. 23, which states, "Continuances shall be granted only when imperative to secure fair treatment for the parties." Appellant notified her attorney "at 7:30 a.m. the day of the hearing * * * that she was not able to be present at the hearing as she was in the hospital [in Michigan]." Specifically, appellant requested "a brief continuance because of her illness and her hospitalization," but did not specify when she would be available. Appellant argues her absence from the permanent custody hearing was "unexpected" because she attended the August 28, September 27 and November 8, 2017 hearings, "visited the children except when she was hospitalized," and "maintained

6.

contact with her counsel." Appellant further argues her "absence from the final hearing was not intentional and beyond her control." As a result, it was "unreasonable and impossible" for appellant's counsel to arrange for her deposition prior to the start of the hearing at 8:30 a.m.

{¶ 17} In response appellee argued the juvenile court did not abuse its discretion when it denied the continuance "because the decision was based on the consideration of two children who have been without a permanent home for over two years." Appellee argued "[t]he trial court and the appellee had worked with the appellant for over two years to find permanency for her children." Appellee further argued appellant's hospitalization "was not a surprise" because the record showed appellant had been "in a nursing home, treatment facility, or hospital throughout the life of this case. * * * The appellant's own attorney stated [at the trial] that she did not know when the appellant was admitted into the hospital and when she would be discharged." Appellee further argued the "caseworker testified [at the trial] to the countless times that the appellant was hospitalized * * * [and] having to have monthly visits at the hospital due to the appellant's illness." The record contained evidence appellant missed "visits with her children due to her illness" and some visits were "at the hospital or nursing homes." Appellee urges us to find:

[T]he appellant received fair treatment during this case and proceeding [because] appellant had been in constant communication with her attorney throughout the case and made her wishes known to her

7.

attorney * * * [who] worked with her before the trial date to prepare for trial * * * [and] before the appellee presented its case and before the appellant's case was presented. [Appellant] was aware of what was taking place during the court proceedings * * * [and her] attorney knew her wishes and had direction from her.

{¶ 18} We review the grant or denial of a continuance for an abuse of discretion. *In re Edward M.*, 6th Dist. Lucas Nos. L-04-1282, L-04-1304, 2005-Ohio-3354, ¶ 21, citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 19} Appellant urges us to find her hospitalization the day of her permanent custody hearing was "unexpected." For an event to be unexpected, the event would not be reasonably anticipated. However, we find the record contains ample evidence that appellant's medical condition was chronic and could be reasonably anticipated to interfere with her parenting responsibilities to the children, including appointments for medical care, visitations and court.

{¶ 20} It is undisputed from 2011 until the date of the hearing on permanent custody on March 5, 2018, appellant's medical condition was frequently interfering with her ability to care for her children, whether because of the prescription medications she

8.

took or because of her housing situation at a nursing home, treatment facility, hospital, or an apartment outside of Ohio. It is undisputed "[t]hrough the majority of this case [appellant] has been under medical care and either hospitalized or in nursing-type facilities." The caseworker testified, "Throughout the time of the case, we have met with mother 15 times either in the hospital, [or] the nursing home." The caseworker further testified appellant "has not been able to show stability in her housing due to the frequent amount of hospitalizations." When not in a hospital, nursing home or treatment facility, appellant briefly resides with friends or relatives in Ohio and Michigan and, on only one occasion, in her own apartment. There were no relatives of appellant or the fathers of the children who could be approved for placement. Appellant did not have a car to drive herself or the children to their appointments. Appellant did not work, but received some sort of disability payment assistance.

{¶ 21} While appellant's medical condition appeared to improve prior to the final hearing where appellant was able to make some court appearances, her medical condition changed on the day of the hearing. It is undisputed appellant required another hospitalization of an unknown duration on March 8, 2018. It is undisputed by the time of the March 8, 2018 hearing the children had been without a permanent home since September 20, 2015, a period of over two years. Appellant's medical condition frequently rendered her very weak and unable to move around to interact with the children during visitations. The caseworker testified appellant has not "progressed in

9.

terms of her medical ability to provide for these children a safe and stable environment" and reunification with the children was not foreseeable.

{¶ 22} The record shows after receiving the arguments of the parties involved with appellant's request for continuance, the juvenile court stated:

> The record will reflect that * * * the issue of mother's health has been an ongoing issue since the beginning of this case. This case has been going on for, I believe, about two and-a-half years. And I'm going to deny the request for continuance at this time finding that it is in the best interest of * * * the children to proceed to hearing at this time.

{¶ 23} The trial court then proceeded to confirm with appellant's attorney that appellant provided clear direction as to her wishes. "Absolutely. * * * [Appellant] would prefer to have her children returned to her."

{¶ 24} We find the juvenile court's decision to deny a continuance to appellant was not unreasonable, arbitrary or unconscionable and was not an abuse of discretion.

{¶ 25} Appellant's first assignment of error is not well-taken.

{¶ 26} In support of her second assignment of error, appellant argued appellee did not meet its burden to prove by clear and convincing evidence that her "physical disability was so severe that she was unable to provide an adequate home for her children, presently or within a reasonable time." Appellant pointed to appellee's inability to testify as to her "medical condition, medical care, short term or long-term medical prognosis." Appellant also pointed to appellee's evidence that from August 2017 until

10.

the March 5, 2018 hearing the case worker "did not testify that during that significant period of time that she ever meet [sic] Appellant in a nursing home or hospital center."

{¶ 27} Appellee argued in response the juvenile court's decision was not abuse of discretion. Clear and convincing evidence supported each of the juvenile court's findings stated in its judgment entry. Appellee argued appellant failed to remedy the conditions that caused the removal of her children because she: (1) was offered case plan services but failed to complete mental health treatment, (2) failed to obtain stable, independent housing, and (3) still has a serious medical condition that prevents appellant from caring for A.P. and J.P. Appellee further argued appellant has a chronic physical disability so severe that she is unable to provide an adequate permanent home for A.P. and J.P. at the present time or within one year because she: (1) has resided in a hospital, rehabilitation center or nursing home throughout the life of this case, (2) was in the hospital at the time of trial with an unknown discharge date, and (3) did not have stable, independent housing.

{¶ 28} We review the juvenile court's determination of permanent custody under a manifest weight of the evidence standard. *In re D.R.*, 6th Dist. Lucas No. L-17-1240, 2018-Ohio-522, ¶ 37, citing *In re P.W.*, 6th Dist. Lucas No. L-12-1060, 2012-Ohio-3556, ¶ 20. We "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the decision must be reversed." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678

11.

N.E.2d 541 (1997). We are mindful the juvenile court was the trier of fact and was "in the best position to weigh evidence and evaluate testimony." *Id.*, citing *In re P.W.* at ¶ 20. The juvenile court's discretion in determining the best interests of A.P. and J.P. with an order of permanent custody is accorded the utmost respect due to the nature of the proceeding and the impact on the lives of the parties concerned. *Id.*, citing *In re C.P.*, 10th Dist. Franklin No. 08AP-1128, 2009-Ohio-2760, ¶ 10.

{¶ 29} The juvenile court may only grant permanent custody of A.P. and J.P. to appellee if it determines "by clear and convincing evidence" that permanent custody to appellee "is in the best interest of the [children]." R.C. 2151.414(B)(1); *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26.

{¶ 30} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 471, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 31} The best interests of the children are to be determined by the juvenile court at a permanent custody hearing pursuant to "all relevant factors, including, but not limited to" the five enumerated factors described in R.C. 2151.414(D)(1)(a)-(e). *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 52.

12.

{¶ 32} R.C. 2151.414(D)(1)(c) states one factor is the custodial history of the children if they have been in the temporary custody of appellee for 12 or more months of a consecutive 22-month period. The record shows the juvenile court made a finding pursuant to R.C. 2151.414(D)(1)(c) by clear and convincing evidence that A.P. and J.P. have been in appellee's custody "for over 2 years." It is undisputed that by the March 5, 2018 hearing A.P. and J.P. had been in appellee's custody since September 20, 2015, a period of 30 consecutive months.

{¶ 33} In addition, the juvenile court must also find by clear and convincing evidence that any of the circumstances described in R.C. 2151.414(B)(1)(a)-(d) exists. *In re C.F.*, at ¶ 23-27.

{¶ 34} R.C. 2151.414(B)(1)(d) required a finding by clear and convincing evidence the children have been in the temporary custody of appellee for at least 12 months of a consecutive 22-month period. The record shows the juvenile court made a finding pursuant to R.C. 2151.414(B)(1)(d) by clear and convincing evidence that A.P. and J.P. have been in appellee's temporary custody consecutively for over 12 months of a consecutive 22-month period. It is undisputed that by the March 5, 2018 hearing A.P. and J.P. had been in appellee's custody for 30 consecutive months.

{¶ 35} Separately, R.C. 2151.414(B)(1)(a) required a finding by clear and convincing evidence the children "cannot be placed with either of the [children's] parents within a reasonable time or should not be placed with the [children's] parents." The record shows the juvenile court made a finding pursuant to R.C. 2151.414(B)(1)(a) by

13.

clear and convincing evidence that A.P. and J.P. "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

{¶ 36} In determining a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the juvenile court "shall consider all relevant evidence" by clear and convincing evidence, including whether one or more of the factors described in R.C. 2151.414(E)(1)-(16) exists. Although the juvenile court found many factors to support its holding, it needed to only find one. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 50.

{¶ 37} The record shows the juvenile court found by clear and convincing evidence pursuant to R.C. 2151.414(E)(1) appellant "failed continuously and repeatedly to substantially remedy the conditions causing the [children] to be placed outside [the children's] home." The juvenile court further found:

> Mother's physical disability prevents her from caring for her children. Mother has been in a nursing home, hospital, or rehabilitation center for most of this case. The children have been in the Agency's custody for over two years. Mother still continues to have severe health concerns which limit her ability to visit and care for the children. Mother was even admitted into the hospital the day of the trial. Mother does not have stable, independent housing. Furthermore, she could not or did not follow through with mental health recommendations.

14.

**{¶ 38}** The record shows the juvenile court found by clear and convincing evidence pursuant to R.C. 2151.414(E)(2):

> Mother has a physical disability that is so severe that it makes her unable to provide an adequate permanent home at the present time or as anticipated, within one year. Mother has resided in a hospital, rehabilitation center, or nursing home throughout the life of this case. Mother is currently in the hospital. It is unknown when Mother will be released. She does not have stable, independent housing for the children.

**{¶ 39}** We do not find the juvenile court clearly lost its way to create such a manifest miscarriage of justice as to require reversal of the judgment regarding the permanent custody of A.P. and J.P.

**{¶ 40}** Appellant's second assignment of error is not well-taken.

**{¶ 41}** On consideration whereof, we find the judgment of the juvenile court terminating appellant's parental rights and granting permanent custody of A.P. and J.P. to appellee was supported by clear and convincing evidence. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.    _____
               JUDGE

Thomas J. Osowik, J.

Christine E. Mayle, P.J.    _____
CONCUR.             JUDGE

             _____
               JUDGE